UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RUBY BELTON, M.D.,

                              Plaintiff,

          v.

BORG & IDE IMAGING, P.C. and
RADNET, INC.,

                    Defendants.

_____

DECISION AND ORDER

18-CV-6776L

### INTRODUCTION

Plaintiff Ruby Belton, MD ("Belton"), filed this lawsuit against defendants Borg & Ide Imaging, P.C. ("B&I"), and Radnet, Inc. ("Radnet") (together, "defendants"), alleging claims for race, sex, and age discrimination and for retaliation pursuant to 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, as well as for breach of contract under New York state law. (Dkt. # 1).

By Decision and Order dated January 12, 2021, this Court granted defendants' motion to dismiss Belton's federal and state race and sex discrimination and retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 440-47 (W.D.N.Y. 2021). The Court also dismissed Belton's federal and state age discrimination claims based on her concession that those claims were "pled in error" and

"should be dismissed."  *Id.* at 437 n.1 (citation omitted).  With no federal claims surviving defendants' motion to dismiss, the Court declined to exercise supplemental jurisdiction over Belton's remaining breach of contract claim pursuant to 28 U.S.C. § 1367(c)(3) and dismissed that claim "in favor of prosecution in state court."  *Id.* at 447.  Accordingly, the Court dismissed Belton's complaint.  *See id.* at 447-48.  The Clerk of Court entered judgement against Belton and in favor of defendants on January 13, 2021.  (Dkt. # 21).

Two weeks later, on January 27, 2021, defendants filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988(b) and Rule 54(d)(2)(A)[1] of the Federal Rules of Civil Procedure, which is currently pending.  (Dkt. # 22).  Defendants seek reimbursement in the amount of $36,675.00 for attorneys' fees and nontaxable expenses associated with their defense of Belton's complaint and a portion of their preparation of the pending fees motion.  (*See generally id.*).  Belton opposes defendants' request (Dkt. # 26), and defendants filed a reply (Dkt. # 27).[2]

---

[1] Rule 54(d) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  FED. R. CIV. P. 54(d)(2)(A).

[2] On March 19, 2021, defendants filed what they termed an "Amended Notice of Motion for Attorney's Fees," which was done "in conjunction with [their] Reply papers."  (Dkt. # 27; Dkt. # 27-1 at ¶ 2 n.1).  Defendants' apparent purpose for this amendment was to "clarif[y] that the bases for relief includes 42 U.S.C. § 2000e-5(k)," (Dkt. ## 27; 27-1 at ¶ 2 n.1; 27-3 at 5 n.1), a statutory fee provision that was not included as a basis for relief in defendants' original moving papers, but which permits attorneys' fees to be awarded to a prevailing party in cases brought under Title VII. *See* 42 U.S.C. § 2000e-5(k) ("[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee").

By proceeding in this manner, defendants have effectively – and improperly – raised a new ground for relief in reply. *See, e.g.*, *Rowley v. City of New York*, 2005 WL 2429514, *5 (S.D.N.Y. 2005) ("[the Second Circuit] has made clear that it disfavors new issues being raised in reply papers") (collecting cases).  Still, I will consider this additional basis for relief.  Plaintiff did not file any objection or request permission to file a sur-reply after defendants filed their "amended notice of motion."  More importantly, however, fee awards under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(b) are determined according to the same standard. *See Bridges v. Eastman Kodak Co.*, 102 F.3d 56, 58 n.1 (2d Cir. 1996) ("Congress intended that § 2000e-5(k) and § 1988 follow similar standards"), *cert. denied sub nom.*, *Yourdon, Inc. v. Bridges*, 520 U.S. 1274 (1997); *Scelsa v. City Univ. of New York*, 827 F. Supp. 1073, 1074-75 (S.D.N.Y. 1993) (standards governing fee awards under Section 1988(b) and Title VII "are the same under both statutes").  As a result, it is hard to see how plaintiff would be prejudiced by this Court considering 42 U.S.C. § 2000e-5(k) as a ground for relief, regardless of the fact that defendants effectively raised it for the first time in reply.

The Court has reviewed the parties' submissions and determined that oral argument is not necessary.  (*See* Dkt. # 23).  For the following reasons, defendants' motion is denied.

## **BACKGROUND**

The factual allegations comprising Belton's complaint against defendants are set forth in detail in this Court's January 2021 Decision and Order (the "January 2021 Decision"), familiarity with which is presumed.  *See Belton*, 512 F. Supp. 3d at 437-40.  Only the portions of the January 2021 Decision necessary for resolution of the pending fees motion will be repeated here.

Belton joined B&I as a physician-shareholder and employee in 2004, when B&I was known as The Ide Group, P.C. ("Ide").  As part of her shareholder responsibilities with Ide, Belton provided medical coverage at Park Ridge Hospital ("PRH") (now known as Unity Hospital). Allegedly faced with racial discrimination at PRH, Belton filed an internal complaint and then formal charges of discrimination with the EEOC in 2005 and 2006.  Belton and Ide ultimately settled those claims in October 2006 (the "2006 Settlement Agreement").  Among other things, the 2006 Settlement Agreement required Belton to "give back" (*i.e.*, not get paid for) a certain number of days each year to defendants for compensation purposes, the precise number of which was to be determined by a formula set forth in the agreement, to account for the fact that she would no longer be providing coverage at PRH.

Much of Belton's complaint in this case stemmed from her disagreement as to the implementation of the 2006 Settlement Agreement.  One portion of the complaint consisted of allegations that defendants increased the number of "give back" days in violation of the 2006 Settlement Agreement, which she began noticing in 2017.  The other portion – more relevant for our purposes here – dealt with how defendants allegedly treated Belton at work in response to her

3

expressed concern that defendants were in breach of the 2006 Settlement Agreement.  Defendants'

alleged misconduct towards Belton ultimately formed the basis of her formal charge of

discrimination and retaliation with the EEOC against them in September 2017 (the "September

2017 EEOC Charge"), which precipitated this lawsuit.

Specifically, Belton alleged instances of mistreatment beginning in 2017 that she believed

amounted to unlawful discrimination and retaliation, which the Court carefully examined in its

twenty-page January 2021 Decision.

Relating to race and sex discrimination, the Court considered five instances of what Belton

alleged constituted "adverse employment action," a necessary element of these claims.  Only one

of these allegations, however, satisfied this element; Belton plausibly alleged that by increasing

her number of "give-back" days in violation of the 2006 Settlement Agreement, defendants

committed an adverse employment action, as this conduct allegedly cost Belton thousands of

dollars in compensation, and thus resulted in a "material loss of benefits." *Belton*, 512 F. Supp. 3d

at 442-43.  Yet Belton's claims failed because she did not plausibly allege that this adverse action

gave rise to an inference of discrimination.  *See id.* at 443-44.  That is, the Court determined that

Belton's allegations did not support an inference that issues surrounding defendants' computation

of "give-back" days occurred *because of* Belton's race or sex.  *See id.*

As for Belton's unlawful retaliation claims, the Court similarly held that the allegations

failed to state claim for relief.  Although Belton engaged in "protected activity" for purposes of

these claims when she filed the September 2017 EEOC Charge, she did not sufficiently plead that

this filing caused defendants to take adverse employment action against her.  *Id.* at 444-46.  The

Court explained that the only adverse action alleged by Belton that occurred after the September

2017 EEOC Charge (defendants' continued challenge to Belton's contractual claims regarding

compliance with the 2006 Settlement Agreement) began to occur *prior* to that filing. *See id.* at 446.  In other words, Belton's retaliation claims failed because a causal connection did not exist between her engagement in a protected activity and any subsequent adverse action taken by defendants. *See id.*

In the January 2021 Decision, the Court also noted that Belton, in her opposition to defendants' motion to dismiss, "summarily request[ed] leave to replead, without having filed a formal motion to amend her complaint," and submitted a proposed amended complaint with her opposition papers. *Id.* at 447.  Belton had failed, however, to "explain how her [proposed amended complaint] would cure any of the pleading deficiencies discussed [in the January 2021 Decision] and pointed out in defendants' motion papers." *Id.*  Accordingly, at that time the Court granted defendants' motion to dismiss, *i.e.*, "[a]t th[at] juncture," the Court "decline[d] to grant Belton's informal and cursory request for leave to amend her complaint." *Id.* at 448.

After this Court issued its January 2021 Decision, Belton did not seek leave to amend her complaint, request that this Court reconsider its decision, or file an appeal.  Instead, Belton obtained new counsel (*see* Dkt. ## 24, 25), and is apparently now litigating her claims against defendants in state court (*see* Dkt. ## 26 at 8; 26-1 at ¶ 8; 26-2; 27-2).

## DISCUSSION

### A. Legal Standard

In our legal system, litigants typically must pay for their own attorneys' fees and expenses. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Various fee-shifting statutes, however, such as 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k), provide an exception to that general rule; both of those statutes permit a court, "in its discretion," to award "a reasonable attorney's fee" to the

"prevailing party."  *See* 42 U.S.C. § 1988(b) (for cases brought pursuant to, *inter alia*, Section 1981); 42 U.S.C. § 2000e-5(k) (for cases brought under Title VII).

In exercising this discretion, courts must remain cognizant that these fee-shifting statutes serve a different purpose depending on which party happens to prevail.[3]  Awards to prevailing plaintiffs are more common, both because a successful civil rights plaintiff has vindicated an important federal policy, and, conversely, because the defendant in such a case has violated federal law.  *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 769-770 (2d Cir. 1998) (explaining rationale behind policy of "routinely" awarding fees to prevailing plaintiffs in civil rights actions).

Awards to prevailing defendants, on the other hand, "protect defendants from burdensome litigation having no legal or factual basis."  *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 420 (1978); *accord Murphy v. Bd. of Ed. of Rochester City Sch. Dist.*, 420 F. Supp. 2d 131, 134 (W.D.N.Y. 2006) (fee awards to prevailing defendants "serv[e] as a deterrent to litigants who bring, or are contemplating bringing, frivolous lawsuits"). Such awards, however, are "very rare," *Sista v. CSC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006), and courts "must be extremely cautious in [awarding attorneys' fees to prevailing defendants] to avoid chilling the vital ability of persons who believe that they are victims of discrimination to seek recourse," *Franchitti v. Bloomberg, L.P.*, 411 F. Supp. 2d 466, 468 (S.D.N.Y. 2006).

A court may award attorneys' fees to prevailing defendants under sections 1988(b) and 2000e-5(k), therefore, "*only* when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (emphasis supplied and alterations omitted)

---

[3]  As explained in footnote 2 *supra*, the standard applicable for awarding attorneys' fees to a prevailing party under 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k) is the same.

(quoting *Christiansburg Garment Co.*, 434 U.S. at 422).  "A claim is frivolous where it lacks an arguable basis in either law or in fact."  *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citation and quotations omitted).  Moreover, "the determination as to whether the claims were frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law."  *LeBlanc-Sternberg*, 143 F.3d at 770.

Importantly, in considering whether a prevailing defendant is entitled to attorneys' fees, the Supreme Court has said that a district court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, h[er] action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."  *Christiansburg Garment Co.*, 434 U.S. at 421-22; *accord Franchitti*, 411 F. Supp. 2d at 468 (stating that courts "must remain acutely aware that claims of discrimination in the workplace often can be difficult to prove, even where discrimination actually has occurred, and that an award of attorneys' fees to a prevailing defendant in such a case *usually* will not be warranted") (emphasis supplied).

**B.  Analysis**

There is no dispute that defendants are "prevailing parties."  The only question, then, is whether this is one of those "very rare" cases in which Belton's discrimination and retaliation claims were so "frivolous, unreasonable, or groundless" to warrant an award of attorneys' fees to defendants.  It is not.  I therefore agree with Belton that defendants have not "me[t] the strict standard applied to prevailing defendants seeking awards of attorneys' fees."  (Dkt. # 26 at 3).

Defendants construe the January 2021 Decision as holding that Belton's complaint was "entirely groundless and frivolous" (Dkt. # 22-3 at 5), and that Belton's "discrimination and

retaliation claims lacked *any merit*" (Dkt. # 27-3 at 6) (emphasis in original).  That interpretation of the January 2021 Decision is based on several considerations, including that this Court dismissed those claims at the pleading stage pursuant to Rule 12(b)(6) and declined, at that time, to grant Belton's request for leave to replead.  In addition, based on their reading of the January 2021 Decision, defendants contend that Belton "failed to state *any* of the required elements of a claim for unlawful discrimination and retaliation; baselessly included allegations related to discrimination claims that pre-date [the] 2006 Settlement Agreement releasing defendants from those very claims; and attempted to assert adverse actions that pre-date the filing of the [September] 2017 EEOC [C]harge [which] could not be the subject of subsequent retaliation." (Dkt. # 22-3 at 10-11 (emphasis supplied)).  In my view, none of these arguments supports defendants' request for attorneys' fees.

Of course, as explained above, this Court dismissed Belton's discrimination and retaliation claims pursuant to Rule 12(b)(6), but only after careful examination of the pleadings and applicable law.  It did so without leave to replead, "[a]t th[at] juncture," in part because Belton's request was "informal and cursory" and "summarily" made without having filed a motion to amend pursuant to Rule 15(a).  *See Belton*, 512 F. Supp. 3d at 447-48.  Assuming *arguendo* that the dismissal of these claims was with prejudice and foreclosed Belton's ability to replead in this Court, that type of dismissal does not necessarily entitle defendants to an award of attorneys' fees as the prevailing parties.  *See, e.g.*, *Ecogen, LLC v. Town of Italy*, 461 F. Supp. 2d 100, 103-104 (W.D.N.Y. 2006) (declining to award prevailing defendants attorneys' fees pursuant to 42 U.S.C. § 1988(b) for claim that was dismissed at the pleading stage with prejudice, and explaining that dismissal of a claim pursuant to Rule 12(b)(6) means "very little" when determining whether fees are warranted, as "[v]irtually every dismissal under Rule 12(b)(6) implies that the complaint was meritless 'when

filed'"); *see also Opoku v. Cnty. of Suffolk*, 123 F. Supp. 3d 404, 413 (E.D.N.Y. 2015) (noting that "even if plaintiff's claims were dismissed under Rule 12(b)(6), it does not necessarily follow that they were unreasonable or frivolous. . . . Even if hindsight proves that plaintiff's allegations were very weak, even weak enough to warrant dismissal upon a 12(b)(6) motion, it does not mean that they were completely without foundation") (brackets and quotations omitted).

Moreover, defendants are simply incorrect that Belton failed to plead "*any* of the required elements" for a claim of unlawful discrimination or retaliation.  (Dkt. # 22-3 at 10 (emphasis supplied)).  In fact, for each of these claims, there was only one element that Belton did not adequately plead.  The Court found that Belton's retaliation claims failed because she did not adequately plead a causal connection between her alleged engagement in a protected activity (the filing of the September 2017 EEOC Charge) and adverse employment action (defendants' challenges to Belton's contract complaints).  *See Belton*, 512 F. Supp. 3d at 541-46.  Causation, therefore, was the sole basis for dismissal of the retaliation claims.

As it relates to the discrimination claims, and contrary to defendants' contention otherwise (*see* Dkt. ## 22-3 at 6; 27-3 at 7), this Court did not hold in the January 2021 Decision that Belton failed to allege an adverse employment action.  Rather, the Court specifically found that Belton's allegations that defendants increased the number of her "give-back" days in violation of the 2006 Settlement Agreement satisfied this element.  *See Belton*, 512 F. Supp. 3d at 443 ("On the other hand, Belton has at least plausibly alleged that she suffered an adverse employment action regarding her 'give-back' compensation concerns.").  Belton's claims failed, however, because she did not sufficiently plead that this adverse employment action "took place under circumstances giving rise to the inference of discrimination."  *Id.* at 441, 443-44.

Properly understood, then, the Court did not dismiss either of Belton's retaliation or discrimination claims because she failed to plead "any" of the required elements.  To claim otherwise overstates this Court's holding in the January 2021 Decision.

In addition, Belton's inclusion in her complaint of alleged instances of discrimination that pre-dated and were waived by the 2006 Settlement Agreement does not support defendants' request for fees.  Belton specified in her opposition to defendants' motion to dismiss that she was not seeking damages based on those allegations, but instead "offer[ed] [them] as relevant background" for her claims.  *Id.* at 445 n.9 (citation and quotations omitted).  If anything, Belton's acknowledgement that she could not seek relief for those earlier allegations of misconduct that she waived by signing the 2006 Settlement Agreement suggests that she did not pursue clearly frivolous or groundless claims.[4]

Finally, defendants are correct that the "adverse action" alleged by Belton in support of her retaliation claims pre-dated her filing of the September 2017 EEOC Charge, and thus could not support the requisite causation element.  *See id.* at 446 (citing, *inter alia*, *Young v. Westchester Cnty. Dep't of Soc. Servs.*, 57 F. App'x 492, 495 (2d Cir.) (summary order), *cert. denied*, 539 U.S. 959 (2003)).  In reaching this outcome, however, the Court carefully considered whether defendants' conduct in continuing to challenge Belton's contractual claims – which did occur after Belton filed her September 2017 EEOC Charge – satisfied the causation element.  Ultimately, the Court determined that it did not because that conduct "was set in motion *before* she filed her September 2017 EEOC Charge," and therefore precluded an inference of causation.  *Id.*  Though

---

[4]   Likewise, Belton abandoned her age discrimination claims in response to defendants' motion to dismiss, acknowledging that the claims were "pled in error" and "should be dismissed."  *Belton*, 512 F. Supp. 3d at 437 n.1 (citation omitted).  This conduct hardly suggests that Belton continued to pursue frivolous, groundless, or unreasonable causes of action "after [they] clearly became so."  *Parker*, 260 F.3d at 111.

the retaliation claims were properly dismissed on this basis, I do not believe that the claims were completely unreasonable or frivolous because she failed to meet this one element.

The cases cited by defendants in support of the proposition that fees are warranted here because Belton's "complaint [was] dismissed for failing to state a cognizable claim" (Dkt. # 22-3 at 10; *see also* Dkt. # 27-3 at 7), do not compel a different outcome, as those cases presented different circumstances.  In *Galvin v. State of New York*, for example, the Second Circuit upheld an award of attorneys' fee where plaintiff, who was an attorney, filed a "307-paragraph complaint, followed by a 387-paragraph amended complaint," neither of which contained allegations of any cognizable injury.  216 F.3d 1072 (2d Cir. 2000).  In *Tornheim v. Eason*, fees were appropriate, according to the Second Circuit, because plaintiff's claims were meritless, and brought "in an attempt to relitigate" previously decided issues and to harass certain defendants.  175 F. App'x 427, 430 (2d Cir. 2006) (summary order).

Furthermore, in *Neroni v. Becker*, the district court awarded attorneys' fees to defendants because plaintiff's case and opposition to defendants' motion to dismiss were "baseless, without foundation, and vexatious," and additionally found that plaintiff and her attorney "brought and pursued th[e] action in bad faith."  2013 WL 5126004, *2-3 (N.D.N.Y. 2014), *aff'd*, 609 F. App'x 690 (2d Cir. 2015) (summary order).  Finally, in *Murphy v. Board of Education of Rochester City School District*, this Court found that fees were warranted because plaintiff's case "[f]rom its inception . . . was meritless and without foundation," plaintiff "continued to litigate the case not only up to the granting of summary judgment, but afterwards, when the groundless nature of the claims had become readily apparent," and that "plaintiff brought and pursued th[e] litigation in bad faith, for the improper purpose of attacking [defendants] about matters that had nothing to do

with the original basis for th[e] lawsuit." 420 F. Supp. 2d at 135 ("it is fair to say that if ever there were a case in which fees should be awarded to a prevailing defendant, this is it").

None of the justifications for attorneys' fees in the above-cited cases is present here. Belton's complaint was a reasonable length, totaling thirteen pages and just over 51 paragraphs (*see* Dkt. # 1), a far cry from the several-hundred-paragraph complaints in *Galvin*. There is also nothing to suggest that Belton filed her claims in bad faith or to harass defendants, continued to litigate her claims after knowing the claims were meritless, or that her filings were vexatious, as in *Tornheim*, *Neroni*, and *Murphy*.

Accordingly, in my view, although Belton's undoubtedly weak allegations justified this Court's decision to dismiss her discrimination and retaliation claims at the pleading stage, I am unpersuaded by defendants' contention that these claims were "entirely groundless and frivolous." (Dkt. # 22-3 at 5). An award of attorneys' fees in favor of defendants is thus not warranted. *See Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980) ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*.").

## CONCLUSION

For the above-stated reasons, defendants' motion for attorneys' fees and nontaxable expenses (Dkt. ## 22, 27) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 10, 2022.